UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA L. QUINONEZ, | CASE NO. 1:10-cv-02078-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Monica L. Quinonez, proceeding *in forma pauperis*, by her attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.)* (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

**I.    Administrative Record**

    **A.    Procedural History**

Plaintiff previously applied for SSI benefits, which were denied at the initial level in or about 1993 and 1997; in 1999, benefits were denied following an administrative hearing. On

February 11, 2008, Plaintiff again filed a SSI application, alleging disability beginning August 14, 2007.  Her claim was denied initially on May 13, 2008, and upon reconsideration on September 25, 2008.  On October 23, 2008, Plaintiff filed a timely request for a hearing.

Plaintiff appeared and testified at the hearing on March 4, 2010.  At the hearing, Plaintiff amended her disability onset date to February 11, 2008.  On April 15, 2010, Administrative Law Judge Regina Sleater denied Plaintiff's application.  The Appeals Council denied review on August 19, 2010.  On November 8, 2010, Plaintiff filed a complaint seeking this Court's review.

**B.     Factual Record**

Plaintiff (born January 25, 1958) left school in the eleventh grade.  In recent years, she worked at Dollar Tree and Big Lots, straightening stock and cleaning.  She also worked at Burger King cleaning and doing light cooking.  Plaintiff never worked as a cashier or counted money.  She briefly worked as a hotel housemaid.  All of her jobs were less than full time.  Plaintiff could not recall what kind of work she did in the 1990's.  She left her last job because she was embarrassed by having to go to the bathroom frequently.

Plaintiff lived in her brother-in-law's home.  Her sons drove her to doctor's appointments since she experienced panic attacks on buses.  Plaintiff had been separated from her husband for many years but had not divorced.

Plaintiff testified that she had hepatitis C and depression.  She also experienced brief headaches and low back pain, which she thought was arthritis.  She testified that she also had a hole in her ear drum, for which surgery had been ineffective.  Her medications included Tramadol, Paxil, Nexium, Nasacort, Tylenol, hydrocortisone ointment, sea oyster, vitamins, and ear drops.

On a typical day, Plaintiff slept until about 10:00 a.m., since her medications made her drowsy.  Upon rising, she showered and ate a small breakfast. (Plaintiff testified that eating small, light meals ameliorated her need to frequently use the bathroom, which was caused by nerves.)  After watching a little television, Plaintiff lays down.  She could not read because she had trouble concentrating.  Plaintiff testified that she had no friends or pets.  Her three sons were adults with their own lives.

1  Two of Plaintiff's three sons, Victor Esquivel and Theodoro Quinonez III, wrote letters in
2  support of Plaintiff's SSI application. Esquivel reported Plaintiff's nerve disorder and anxiety,
3  which had been exacerbated by the diagnosis of Hepatitis C. Quinonez stated that Plaintiff, who
4  struggled with depression, anxiety, and a nerve disorder, was unable to maintain a job and
5  struggled with socializing. She cried "constantly."

**Dr. Singer.** Psychiatrist Thomas Singer reviewed the agency record before providing expert testimony at the March 4, 2010 hearing as an agency consultant. He testified that, although various labels had been applied to Plaintiff's depressive symptoms over the years, all diagnoses were tantamount to depression. Singer opined that none of Plaintiff's symptoms met or equal listing criteria. Although he opined that Plaintiff's mental disorder resulted in mild to moderate limitations, he added that because the medical record was so "thin" and included no record of treatment within the prior two-and-a-half years, his opinion had very little basis.

**Community Medical Center.** Plaintiff's anxiety improved with medication. Lab test results dated September 28, 2007, confirmed that Plaintiff tested positive for hepatitis C. Plaintiff was also anemic.

**University Medical Center.** Physicians at University Medical Center diagnosed anemia, heartburn, Hepatitis C, and depression. Plaintiff had chronic sinusitis, lower abdominal pain, and chronic diarrhea.

**Dr. S. Damania.** Psychiatrist Shireen Damania, M.D., examined Plaintiff as an agency consultant. She observed that Plaintiff provided a vague medical history. Plaintiff demonstrated no difficulties in hearing normal speech. Plaintiff reported that she had taken no medications for the last two or three months, after her medications were stolen from her apartment. Damania diagnosed:

| | |
|---|---|
| Axis I | Adjustment Disorder with Mixed Anxiety and Depressed Mood |
| Axis II | No diagnosis |
| Axis III | Hepatitis C, by history |

///
///

    Axis IV        Level of Psychosocial Stressors – Mild (unemployed)

    Axis V        GAF Current= 61.  Highest past year = 61

AR 222.[1]

Damania summarized:

> The claimant was pleasant and cooperative, with good interpersonal and social skills. No difficulties were noted in memory, concentration, persistence, and pace. There was no evidence of emotional lability or deterioration.
>
> She is able to understand, carry out and remember three- and four-step job instructions in a work-like setting. She is able to respond appropriately to coworkers, supervisors, and the public. She is able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision.

AR222.

**Dr. R. Damania.** Internist Rustom Damania, M.D., examined Plaintiff as an agency consultant. He observed no abnormalities. Damania opined:

> The patient is a 50-year-old female. The patient should be able to lift and carry 20 pounds occasionally and 10 pounds frequently. The patient should be able to stand and walk without restriction. The patient should be able to sit without restriction. The patient does not require an assistive device for ambulation. No postural limitations. No manipulative limitations. No relevant visual or communicative impairments.

AR 229.

**Dr. Fracchia.** Agency physician Charles A. Fracchia, M.D., prepared a physical residual functional capacity assessment. He opined that Plaintiff could lift and carry more than 100 pounds occasionally and more than 50 pounds frequently; could stand or walk about six hours in an eight-hour work day; could sit about six hours in an eight-hour work day; and had unlimited ability to push and pull.

---

[1] The Global Assessment of Functioning (GAF) scale may be used to report an individual's overall functioning on Axis V of the diagnosis. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., Text Revision 2000) ("DSM IV TR"). It considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," excluding "impairment in functioning due to physical (or environmental) limitations." *Id*. at 34. The first description in the range indicates symptom severity; the second, level of functioning. *Id*. at 32. In the case of discordant symptom and functioning scores, the final GAF rating always reflects the worse of the ratings. *Id*. at 33.
    GAF 61 is at the bottom of the range GAF 61-70, which indicates ""[s]ome mood symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id*. at 34.

1 **Dr. Khong.** Agency physician A. Khong, M.D., also prepared a physical residual functional capacity assessment. Like Dr. Fracchia, he opined that Plaintiff could lift and carry more than 100 pounds occasionally and more than 50 pounds frequently; could stand or walk about six hours in an eight-hour work day; could sit about six hours in an eight-hour work day; and had unlimited ability to push and pull.

**Dr. Garcia.** Archi R. Garcia, M.D., completed the mental residual functional capacity assessment. Garcia reported that Plaintiff had an affective disorder. He opined that Plaintiff had no significant limitations except for moderate limitations in her ability to understand, remember, and carry out detailed instructions. Plaintiff had no restrictions of daily living, and mild restrictions in maintaining social functioning and maintaining concentration, persistence, and pace. There was insufficient evidence of episodes of decompensation.

## II.     Discussion

### A.     Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one:   Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two:   Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

5

| | | |
|---|---|---|
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. | |
| Step four: | Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. | |
| Step five: | Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. | |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

In addition, when an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does here, he or she must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). Social Security Acquiescence Ruling ("SSR") 96-4(9), adopting *Chavez*, applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjuducated period. *Lester*, 81 F.3d at 827. The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's RFC, age, education, or work experience. *Id.* at 827-28; *Chavez*, 844 F.2d at 693.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of February 11, 2008. Her severe impairment was adjustment disorder with mixed anxiety and depressed mood. This impairment did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.925 and 416.926). Plaintiff was capable of performing her past work as a kitchen helper, housekeeping cleaner, and a sales attendant. Judge Sleater adopted the physical residual functional capacity determined in the 1999 hearing decision and Dr. S. Damania's mental residual functional capacity assessment.

### B. Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

### C. Determination of Plaintiff's Credibility

> The problem is when you say supported by the record, the record is so thin that I consider all of these sort of guestimates because she hasn't really been receiving ongoing treatment. I don't think there's anything from 2008 forward which means the last year and a half or two years, almost two years without any evidence. So there's not a lot to base an opinion on as to the degree to which she's limited.

AR 37.

Dr. Singer's difficulty evaluating the functional limitations imposed by Plaintiff's mental impairments expresses the core difficulty with Plaintiff's claim. Although the previous final determination of that Plaintiff was not disabled created a presumption that she continued not to be disabled (*Lester*, 81 F.3d at 827), Plaintiff failed to provide substantial evidence demonstrating changed circumstances, such as new and material changes to her residual functional capacity, age, education, or work experience. *See id.* at 827-28; *Chavez*, 844 F.2d at 693.

Plaintiff contends that the ALJ erred in requiring her subjective complaints to be supported by and consistent with objective medical evidence. She overstates her case. The regulations warn:

> Statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 416.929 (a).

As Judge Sleater observed, "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." AR 17, *quoting* SSR 96-4p.

### 1. Severe Impairment

First, in determining Plaintiff's severe impairments, the ALJ accepted only Plaintiff's claimed psychological impairment: adjustment disorder with mixed anxiety and depressed mood. The ALJ found that the medical records provided by Plaintiff failed to support her claims of hepatitis C, hearing loss, low back pain, frequent urination, and headaches. Even if Plaintiff did in fact have these conditions, added the ALJ, they could not be severe impairments since they did not impose any significant physical limitations. The ALJ relied largely on Dr. R. Damania's consultative evaluation, which was completely normal, and on Dr. S. Damania's observation in the course of the psychological evaluation that Plaintiff was able to hear normally spoken speech and did not wear a hearing aid.

### 2. Underlying Physical or Mental Impairment

The ALJ analyzed Plaintiff's residual functional capacity in two steps, first determining the existence of an underlying, medically determinable, physical or mental impairment, and next analyzing whether the identified impairments could reasonably be expected to produce the claimed symptoms. Her analysis of the underlying impairments reflected the paucity of the submitted evidence. Although a lab test for Hepatitis C was abnormal, the record included no

evidence of evaluation, further diagnosis, or treatment.  A September 2009 chest x-ray showed no active cardiopulmonary disease.  Plaintiff's anemia was successfully addressed with an iron supplement.  Treatment records did not address arthritis, hearing loss, headaches, or frequent urination;[2] indeed, the records indicated that Plaintiff simply received routine medical care.  Plaintiff had received no treatment for her alleged mental impairment.  The ALJ discussed in detail Dr. S. Damania's consultative examination, which was conducted after Plaintiff had not taken he antidepressant (Paxil) for several months, noting that Damania opined that Plaintiff was capable of functioning in a normal work environment to perform a job limited to simple three- or four- step instructions.

The ALJ could hardly have reached any other conclusion: Plaintiff herself testified that she was not being treated for Hepatitis C and that she had not received any mental health treatment for about two years.

### 3.     Credibility of Plaintiff's Testimony

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  But if he or she decides to reject a claimant's testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints.  *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive.  *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006).  The credibility findings must be "sufficiently specific to permit the

///

---

[2] Plaintiff testified vaguely that she frequently had to go to the bathroom.  Although the ALJ interpreted the testimony to refer to frequent urination, the record suggests that Plaintiff actually suffered from frequent diarrhea.  Plaintiff does not claim that this error was harmful.

court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

///

The ALJ met these requirements, addressing the credibility of Plaintiff's testimony in a nearly four-page discussion of Plaintiff's residual functional capacity (AR 19-22). After summarizing Plaintiff's subjective complaints, the ALJ found that the record, particularly Dr. S. Damania's consultative examination, did not support Plaintiff's claims. The ALJ noted:

> There are no objective medical findings for the alleged arthritis, hearing loss, headaches or frequent urination problems. Overall, the sparse medical evidence of the record demonstrates the routine medical care as opposed to treatment of disabling conditions. Further there is no ongoing medical treatment for mental impairment (Testimony of Medical Expert). Of note, the claimant has not presented opinions from her treating doctors about her physical or mental work-related opinions.

AR 20.

Judge Sleater observed that the agency had applied *Chavez* to conclude that Plaintiff's condition had not changed since the prior hearing decision which found that Plaintiff had a heavy residual functional capacity with simple repetitive tasks. Although the opinions of Plaintiff's sons expressed deep sympathy and concern for their mother, they did not include factual observations of Plaintiff's work-related limitations. In any event, their statements were outweighed by the absence of any mental health treatment.

The ALJ found Plaintiff's ability to care for her own personal hygiene, cook, and perform household chores; to get along with her brother-in-law and sons; and to appreciate her brother-in-law's support consistent with the residual functional capacity assigned by the prior decision but inconsistent with Plaintiff's claim of a chronic mental problem. She added:

> The undersigned considered but granted little weight to the claimant's testimony. Claimant's complaints appear exaggerated and motivated largely by secondary gain factors. The record reveals numerous contradictions and inconsistencies in claimant's statements regarding adjustment disorder; hepatitis C; low back pain; frequent urination and headaches. At the hearing, claimant stated she was not fully evaluated and treated for hepatitis C; however, the record shows she did not follow up on referral with a specialist on 9/7/2007. Claimant complained about hearing difficulties but she was able to hear adequately at the psychiatric evaluation without wearing any hearing aid. Further, at the time of the psychiatric evaluation, she was off psychiatric medications for 2-3 months but was doing fine at the exam. These discrepancies and inconsistencies do not support the claimant's ultimate allegation of disability.

AR 21-22 (*citations to hearing exhibits omitted*).

///

**4.     Summary**

Substantial evidence supported the ALJ's determination that Plaintiff's testimony lacked credibility. The ALJ properly set forth the reasons for her determination.

**B.     Plaintiff's Prior Employment**

"To be found disabled under the law, an individual . . . must have a medically determinable physical or mental impairment(s) of such severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." S.S.R. 82-62. Elevating process over substance, Plaintiff contends that the ALJ's determination that she is not disabled must be reversed since the ALJ erred at step four by failing to analyze whether her prior part-time work as a kitchen cleaner, housekeeper, and sales attendant qualified as "past relevant work." The claimed error does not compel reversal.

At step four of the disability analysis, an ALJ considers the claimant's ability to perform his or her past relevant work. S.S.R. 82-62. Past relevant work is defined as work the claimant has performed within the past fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to earn how to do it. 20 C.F.R. § 416.960 (b)(1). Substantial gainful activity is work that (1) involves doing significant and productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 416.910. If a claimant can perform substantial gainful activity, he or she will generally not be found to be disabled. 20 C.F.R. § 416.971. Accordingly, if the claimant can still perform his or her past relevant work, he or she is determined not to be disabled at step four. 20 C.F.R. § 416.920 (f).

If the agency finds that the claimant cannot do his or her past relevant work *or does not have any past relevant work*, the analysis proceeds to step five, at which the ALJ must determine whether the claimant's impairment(s) prevent him or her from performing any other work. 20 C.F.R. § 416.920 (g) (*emphasis added*). Even Plaintiff's contention that her prior work did not pay enough to constitute substantial work is correct, she is not automatically found to be disabled. Instead, like all other claimants who lack past relevant work, Plaintiff's claim proceeds

///

to step five. When an ALJ makes an alternative finding at step five, an error at step four is harmless. *Tommasetti*, 533 F.3d at 1042-43.

At step five, Judge Sleater determined that Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels, with two nonexertional limitations: (1) Plaintiff was limited to three- and four-step job instructions in a work-like setting and (2) Plaintiff must avoid detailed work. AR 19-22. As part of her detailed and extensive discussion regarding Plaintiff residual functional capacity, the ALJ observed, "Based on the entire record and following the *Chavez* case, the State agency medical consultants adopted the Heavy RFC with the simple repetitive tasks from the prior ALJ decision." AR 21.

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the ALJ's failure to consider whether Plaintiff's prior jobs constituted substantial gainful activity was error, that error was harmless.

### III. Conclusion and Order

The Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   February 3, 2012              /s/ Sandra M. Snyder
                                      UNITED STATES MAGISTRATE JUDGE